**UNITED STATES of America ex rel. Alfred PARKER**

v.

**Alfred T. RUNDLE.**

**Misc. No. 3325.**

United States District Court
E. D. Pennsylvania.
Sept. 16, 1966.

---

Alfred Parker, pro se.

Michael J. Rotko, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

JOSEPH S. LORD, III, District Judge.

This is a habeas corpus case in which a state prisoner seeks to challenge the introduction of his prior criminal record and a confession allegedly uncounseled and coerced, both of which were used against him at his trial. The Pennsylvania courts have rejected these contentions on their merits, and federal scrutiny is now appropriate.

The relator in this habeas corpus case was accused of killing his common law wife and he pleaded guilty to murder generally on October 19, 1959. At the time of the plea and hearing thereon, he was represented by counsel. The prosecutor certified that guilt would not rise above second-degree murder, and a nonjury hearing ensued to determine the exact homicide of which Parker was guilty and to fix the appropriate penalty. The procedure, therefore, was not just a sentencing hearing. It was a hearing at which evidence was necessary, from which the judge was called upon to make a legal determination of the degree of

guilt. Defendant's plea of guilty to murder generally was unlike the conventional guilty plea, because following this plea evidence was introduced against defendant. One specific purpose of that evidence here was to determine whether defendant was guilty of second-degree murder or of a lesser crime. Hence, it becomes necessary to inquire into the effect of the allegedly improper evidence.

▉ Turning first to the confession: Relator asserts that the confession was taken in violation of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). That contention is now foreclosed because Parker's conviction became final in 1959. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Parker, however, contends also that the confession was coerced, although nowhere does he allege that his plea was induced by the confession. At the hearing in the state court, the confession was read into evidence by the detective who took it. There was no objection by the defense, and no effort to examine the detective on *voir dire* to determine its voluntariness. The cross-examination relating to the taking of the statement was perfunctory and there was no motion to strike the statement. When defendant took the stand, he testified to substantially the same facts that were in the statement. He was asked no questions on direct examination concerning the statement, but on cross he testified to circumstances suggesting possible coercion. The matter was not pursued by the defense and near the close of cross-examination the following occurred (state transcript, p. 100):

"Q The things in the statement, most of them, are correct, aren't they?

"A Yes.

"MR. DASHIELL: I think Your Honor should be aware that we are not denying what is in the statement.

"THE WITNESS: No, I am not denying the statement.

"THE COURT: As a matter of fact, he points out no contradictions or inconsistencies in the statement."

At the conclusion of the evidence, there was no motion to strike the statement or for the judge to disregard it.

▉ Assuming *pro arguendo* that the statement was coerced, we are nonetheless convinced that relator is in no position now to attack the finding of second degree murder and the ensuing sentence. Under Pennsylvania law, the failure to object to allegedly inadmissible evidence precludes later challenge to its admission. Pellegrene v. Luther, 403 Pa. 212, 216, 169 A.2d 298 (1961). And *although* on federal habeas corpus "the procedural default will not alone preclude consideration of [the] claim." Henry v. State of Mississippi, 379 U.S. 443, 452, 85 S.Ct. 564, 570, 13 L.Ed.2d 408 (1965), if the failure to object is a "deliberate by-passing by counsel of the contemporaneous-objection rule as a part of the trial stategy," ibid., pp. 451–452, 85 S.Ct. p. 569, relator is equally barred in the federal courts. Henry v. State of Mississippi, supra.

▉ In this case, relator voluntarily took the stand. By so doing, he invited belief in his testimony that he had been provoked into the killing. And since his testimony was essentially the same as his statement, he thus invited belief in the statement. By not objecting, relator succeeded in getting into evidence that which he could not otherwise have done, a prior consistent statement. Cf. Commonwealth v. Friedman, 193 Pa.Super. 640, 647, 165 A.2d 678 (1960); cf. Commonwealth v. Kay, 14 Pa.Super. 376 (1900). Relator was then in a position to point to early corroboration of the only defense he advanced at trial, the defense of provocation. The concatenation of the relator's voluntary testimony consistent with his earlier statement and counsel's failure to object to the statement lead inescapably to the sole inference that the failure to object was a deliberate by-passing of the state rule as a part of trial stategy.

■ There is still another reason why the admission of the statement is no ground for relief. Under Pennsylvania law a plea of guilty to murder generally is a plea of guilty to second-degree murder. Commonwealth v. Iacobino, 319 Pa. 65, 178 A. 823 (1935); Commonwealth v. Markle, 394 Pa. 34, 145 A.2d 544 (1958). The burden is on the Commonwealth to raise the homicide to first-degree, Commonwealth ex rel. Dandy v. Banmiller, 397 Pa. 312, 155 A.2d 197 (1959), and on the defendant to lower it to voluntary manslaughter. Commonwealth v. Green, 10 Pa.Dist. & Co.R. 56 (1927). Because he was found guilty of exactly what he pleaded to, the confession played no part in the determination of guilt. The conviction was not one "following the admission into evidence" Rogers v. Richmond, 365 U.S. 534, 540, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) of the confession; it was, rather, a conviction following and based upon the guilty plea. It was the result of relator's own voluntary plea, untainted by any infirmity in the confession.

■ We reach now the use of defendant's prior criminal record. Again, the plea of guilty to murder generally, i. e., second-degree murder makes this matter of no significance, since the conviction was based on the plea. In any event, the nature of the offenses, their small number, their remoteness and the scant significance attached to them by the trial judge [1] lead us to conclude that there was no fundamental unfairness in the proceeding, cf. United States ex rel. Lowry v. Myers, 364 F.2d 297 (C.A.3, 1966), affirming 242 F.Supp. 477 (E.D.Pa. 1965).

■ Federal habeas corpus is not concerned with the propriety of this procedure as a matter of state law. See Gemmel v. Buchkoe, 358 F.2d 338 (C.A.6, 1966). From the point of view of due process, the number of convictions, their

remoteness in time from the time of trial (1959), and the scant weight which the trial judge attributed to them all suggest no impairment of the fact-finding process. Parker was not prejudiced by the judge's knowledge of his criminal record.

The writ will be denied. It is so ordered.

[1]. The court's only remarks were: "He has a record of disorderly conduct and moral habits apparently at one time in the south. At one time apparently he was the maker of illicit liquor. He has a

charge once for carrying a weapon in 1940. But nothing other than that. Illegal use of [space] weapon, untaxed liquor, loitering, and disorderly conduct, just rather a dissolute life." N.T. 106.